# EXHIBIT B

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Brian Rosenthal
Direct: +1 212.351.2339
Fax: +1 212.817.9539
BRosenthal@gibsondunn.com

September 30, 2020

VIA ELECTRONIC MAIL

James L. Etheridge
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Jim@EtheridgeLaw.com

**Re: WSOU Investments, LLC v. Dell Techs. Inc. and EMC Corp., Case Nos. 6:20-cv-473, 6:20-cv-474; 6:20-cv-475; 6:20-cv-476; 6:20-cv-479; 6:20-cv-482 (W.D. Tex.)**

Dear Jim:

We write on behalf of our clients, Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") regarding WSOU's infringement allegations as to asserted U.S. Patent Nos. 9,137,144 (the "'144 patent"); 7,212,536 (the "'536 patent"); 7,453,888 (the "'888 patent"); 7,565,435 (the "'435 patent"); 8,402,129 (the "'129 patent"); and 7,424,020 (the "'020 patent").

As detailed below, WSOU's allegations with respect to these six patents are wholly without merit and should be dismissed immediately. This is not a case in which reasonable minds could differ. There is nothing in the accused products that even resembles the features claimed in these six patents. No reasonable amount of investigation would have revealed otherwise. Indeed, there is nothing in the Complaint or any of the referenced materials that suggests in any way the existence of the claimed features. After diligently reviewing the Complaint, the referenced materials, and further investigating the functioning of the accused products, we are at a loss as to what could have caused WSOU to believe that there was any basis to bring a case on these patents.[1]

---

[1] Defendants also do not infringe any valid claims of the other patents WSOU has alleged in parallel lawsuits and those patents will be addressed in due course. The allegations addressed herein, and in the September 25, 2020 letter regarding *VMware in WSOU Investments, LLC v. Dell Techs. Inc., EMC Corp., and VMware, Inc.*, Case Nos. 6:20-cv-480; 6:20-cv-481; 6:20-cv-485; 6:20-cv-486 (W.D. Tex.), are so baseless that they should never have been brought and need to be dismissed immediately.

GIBSON DUNN

James L. Etheridge
September 30, 2020
Page 2

In view of the lack of any basis to bring suit, WSOU should immediately dismiss the complaints in the above-referenced actions. Otherwise, Defendants will seek all available remedies for being forced to defend against such baseless allegations.[2]

**'144 patent**. WSOU alleges infringement of the '144 patent and identifies claim 1, which requires "determining V mod N" and "selecting a path associated with an index equal to the result, wherein N is a number of the lowest cost paths in the plurality of communication paths and V is a group identifier corresponding to the group of communication traffic." As WSOU should know, the applicant distinguished the use of "V mod N" as a means of selecting the path to use for transmission from the mere use of a hash function because using a hash function was shown in a prior art reference. *E.g.*, '144 patent file history, July 17, 2014, Applicant Response, 6.

The Complaint cites no evidence that the accused products perform "V mod N" or that "V is a group identifier" for lowest cost path calculations. Instead, WSOU alleges infringement based on the use of a hash function in Equal-Cost-Multi-Path ("ECMP") to determine the path. Of course, this contradicts the plain language of the "V mod N" limitation, particularly in light of the Applicant's disavowal and arguments made during prosecution.

Furthermore, WSOU cannot plausibly accuse Dell's alleged use of ECMP hashing of infringement because this technology predates the priority date of the '144 patent.[3] In other words, to the extent ECMP hashing meets the claims—which it does not—it would anticipate the claims in any event. Dell's products, therefore, either do not infringe or they invalidate the claims. This should have been readily ascertainable in any reasonable pre-filing investigation.

We do not see any basis for WSOU to have alleged infringement of this patent. As such, we request WSOU either dismiss the suit involving the '144 patent or provide some explanation as to the basis for its lawsuit, including an explanation of how WSOU can plausibly allege infringement of functionality that predates the patent.

**'536 patent**. WSOU alleges infringement of the '536 patent and identifies claim 1, which requires a "map providing a correspondence between each of the plurality of priorities and one of the service interfaces" and "a forwarding system configured to read a priority of a data frame

---

[2] We also note that WSOU has filed an infringement action against Dell GmbH alleging infringement of EP1915839 in Germany. That case is also meritless, and demonstrates WSOU's campaign of filing lawsuits without any regard for the merit of their allegations. That case should also be withdrawn immediately.

[3] *See, e.g.*, https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/S4810_CONFIG_8.3.10.1_01-Feb-2012.pdf?_sm_au_=iVV2PMrmq5443k2jFcVTvKQkcK8MG at 305 (last retrieved on Sept. 30, 2020); https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/S4810_CONFIG_8.3.10.2_12-Apr-2012.pdf?_sm_au_=iVV2PMrmq5443k2jFcVTvKQkcK8MG (last retrieved on Sept. 30, 2020).

Internal Use - Confidential

**GIBSON DUNN**

James L. Etheridge
September 30, 2020
Page 3

to be forwarded onto the connection-based network by way of the first one of the ports, identify a service interface which the map indicates corresponds to the read user priority and forward the data frame over the channel in the connection-based network associated with the identified service interface."

The technology accused of infringement does nothing of the sort. WSOU's Complaint is based on the use of a "Quality of Service," or "QoS," whereby which each port may have its own QoS policy that uses the QoS to assign an egress queue for each packet *within an interface*. *See* No. 6:20-cv-474, D.I. 1 ¶ 16. The documentation WSOU relies on states that the QoS affects only the choice of a queue within a single interface; it has no effect on the choice of interface itself, as the claims require. PowerConnect 5548 User Guide at 646 ("The switch supports eight queues for each interface."). In other words, the technology described by the Complaint uses QoS to assign a packet to a queue *within an interface*, but has nothing to do with the *choice of interface*. Of course, the claim unquestionably cannot cover assigning traffic different priorities within an interface because that is explicitly described by the admitted prior art. *See* '536 patent, 1:55-57 ("Annex H of IEEE standard 802.1D describes a way to map user priorities to service queues."). The claims, on the other hand, require using a priority map to assign traffic *to an interface itself*, not to different queues *within* an interface.

We do not see any basis for WSOU to have alleged infringement of this patent. As such, we request that WSOU either dismiss the case as to the '536 patent or provide an adequate explanation as to the basis for its lawsuit.

**'888 patent.** WSOU alleges infringement of the '888 patent and identifies claim 1, a method claim requiring the performance of each and every step of the claimed method, including "obtaining at least one backbone VLAN Identifier (ID)," "selecting a plurality of backbone VLAN trunks," and "associating each of the backbone VLAN ID with each one of the plurality of backbone VLAN trunks by: . . . determining a plurality of stackable trunk ports corresponding to the plurality of backbone VLAN trunks . . . and . . . associating the backbone VLAN ID with each one of the plurality of stackable trunk ports." Claim 1 also requires "the selection and association of the at least one backbone VLAN ID with each one of the corresponding plurality of backbone VLAN trunks is undertaken *irrespective of one of an in-use and a stand-by designation* of each one of the plurality of backbone VLAN trunks and each one of the plurality of stackable trunk ports."

WSOU's Complaint does not allege any actual performance of the aforementioned steps, instead alleging only that the Accused Products "*may configure* a trunk port so that a numbered tag is inserted in each ethernet frame to keep the traffic of different VLANs from mixing." No. 6:20-cv-00475, D.I. 1 ¶ 15. There is no allegation that such a configuration is ever actually performed. Without any allegation that the Accused Products actually perform

Internal Use - Confidential

**GIBSON DUNN**

James L. Etheridge
September 30, 2020
Page 4

each and every step of the claimed method, WSOU cannot plausibly state a claim for infringement.

Moreover, the Complaint is silent on how the accused products, including "Force 10 MXL switches," could even be configured to meet these claim limitations. *Id.* ¶ 13. For instance, the Complaint lacks any substantive allegations regarding whether the Accused Products can be configured to obtain backbone VLAN Identifiers. Moreover, the Complaint further fails to provide any indicia as to how the VLAN Identifiers are associated with backbone VLAN trunks. WSOU fails to allege, or provide any facts to support, the requirement that the selection and association of backbone VLAN IDs with backbone VLAN trunks is "undertaken irrespective of one of an in-use and a stand-by designation of each one of the plurality of backbone VLAN trunks and each one of the plurality of stackable trunk ports." The only allegation that even addresses an active or standby state is WSOU's reference to the "spanning-tree pvst edge-port" command.

A closer read of the patent itself coupled with WSOU's allegations in the Complaint makes it clear that WSOU's infringement contention is untenable. Turning first to the patent, the specification states: "***trunk ports 102 are connected*** to the data transport trunks 108 ***between the data switching nodes 106.***" *See* '888 patent at 3:53-56 (emphasis added). But the Complaint itself states "[t]he 'spanning-tree pvst edge-port' command should only be run on ports that will connect to servers or other end nodes and ***never on ports that will connect to other switches***." *See* No. 6:20-cv-00475, D.I. 1 ¶ 17 (emphasis added). Plaintiff's own complaint thus establishes that the functionality it relies on ***cannot*** be applied to trunk ports, as required by the claims.

We do not see any basis for WSOU to have alleged infringement of this patent. As such, we request that WSOU either dismiss the case alleging infringement of the '888 patent or provide an adequate explanation as to the basis for its lawsuit.

**'435 patent.**   WSOU alleges infringement of the '435 patent and identifies claim 1, a method claim requiring the performance of each and every step of the claim method, including "creating and configuring a plurality of Multiple Spanning Tree Instances (MSTIs) whose active topology covers the topology of Virtual Local Area Networks (VLANs) being used within the computer network," "setting the Internal Port Path Cost (IPPC) of one of the ports of one of said bridges within the MSTI to a high IPPC when said port is not part of the VLAN member set," and "setting the IPPC of one of the ports of one of said bridges within the MSTI to a lower IPPC when said port is part of the VLAN member set."

WSOU's Complaint never alleges that these steps are ever actually performed. Instead, the Complaint alleges only that the Accused Products "may be configured" in such a way. No. 6:20-cv-00476, D.I. 1 ¶¶ 14, 15, 17. Without any allegation that the Accused Products

Internal Use - Confidential

**GIBSON DUNN**

James L. Etheridge
September 30, 2020
Page 5

*actually* perform each and every step of the claimed method, WSOU cannot plausibly state a claim for infringement.

WSOU's failure to allege actual performance is revealing—WSOU has no basis to allege infringement of this patent. WSOU should drop its lawsuit alleging infringement of this patent immediately or provide an adequate explanation as to its basis for proceeding.

**'129 patent.** WSOU alleges infringement of the '129 patent and identifies claim 3, which requires "monitoring usage of the resource in a node to determine when a rate of change of the usage exceeds a first predetermined threshold" and "reporting to a management station of the network when the rate of change of the usage exceeds said first predetermined threshold." As WSOU should know, the "rate of change" limitation was emphasized during prosecution as the allegedly inventive aspect of the claims. *See* August 14, 2012 Patent Board Decision, 4.

The Accused Products do not monitor any "rate of change." Given the pattern discussed thus far, it is unsurprising that WSOU's Complaint fails to allege any facts that the accused product meets this limitation. Instead, WSOU points generally to "SNMP traps," which the Complaint alleges "can be configured to generate alarms if the attribute being monitored crosses a certain threshold." No. 6:20-cv-479, D.I. 1 ¶ 18. But the Complaint is completely silent regarding any alerts that are based on the "rate of change" of an attribute. The SNMP functionality WSOU relies on describes alerts that may be triggered when certain attributes cross certain *thresholds*. *E.g.*, No. 6:20-cv-479, D.I. 1 ¶ 18. This functionality is the same as the prior art that was distinguished during prosecution. *E.g.*, '129 patent file history, May 2, 2007, Applicant Response, 7.

Thus, the functionality identified in WSOU's Complaint is the very functionality distinguished during prosecution and, therefore, cannot form the basis of an infringement allegation. WSOU should drop the case involving the '129 patent immediately or provide an adequate explanation as to its basis for proceeding.

**'020 patent.** WSOU alleges infringement of the '020 patent and identifies claim 6, which requires that "the communication network is a bus system." WSOU's Complaint is completely silent on this limitation. WSOU does not provide a single allegation that the claimed *communication network* is a bus system.

The Complaint's failure to allege any facts regarding infringement of this limitation is not an oversight because Dell's Edge Gateways undeniably do not meet such a limitation. The documentation relied upon by the Complaint shows clearly that the Edge Gateways "connect your legacy industrial systems and your new *mesh* networks." *See, e.g.*, https://www.dell.com/en-us/work/shop/gateways-embedded-computing/sf/edge-gateway (emphasis added) (last retrieved on Sept. 30, 2020). A mesh network is *not* a communication

Internal Use - Confidential

GIBSON DUNN

James L. Etheridge
September 30, 2020
Page 6

network with a bus system, and WSOU cannot credibly claim otherwise.  Elsewhere, the Complaint equates the Internet with the "communication network."  No. 6:20-cv-482, D.I. 1 ¶ 16.  Again, the Internet is clearly not a "bus system."

If there are some bases for WSOU to believe that this limitation is met by the Edge Gateways, identify them.  If not, WSOU's lawsuit alleging infringement of the '020 patent must be dismissed immediately.

* * *

For the reasons stated above, WSOU should dismiss these six complaints immediately.  We expect that WSOU will consider Defendants' request promptly and seriously.  If WSOU chooses to ignore these requests and refuses to dismiss these actions, Defendants will seek all available remedies for being forced to defend against meritless allegations, including those under 35 U.S.C. § 285.

Best,

*/s/Brian A. Rosenthal*

Brian A. Rosenthal

Internal Use - Confidential