# APPENDIX C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION,<br><br>Defendants. | Case No. 6:20-cv-00476-ADA<br><br>**JURY TRIAL DEMANDED** |

**LETTER OF REQUEST: REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

GREETINGS:

| 1. | Sender | The Honorable Judge Alan D Albright, District Judge United States District Court for the Western District of Texas, Waco Division<br>800 Franklin Avenue Room 301<br>Waco, Texas 76701<br>USA |
|---|---|---|
| 2. | Central Authority of the Requested State | Ministère de la Justice<br>Direction des Affaires Civiles et du Sceau<br>Bureau du droit de l'Union, du droit international privé et de l'entraide civile (BDIP)<br>13, Place Vendôme<br>75042 Paris Cedex 01<br>France |
| 3. | Person to whom the executed request is to be returned | This Court; representatives of the parties as indicated below; the witnesses from whom evidence is requested as indicated below; such other person(s) that you deem proper; and Defendants' representative in France:<br><br>**Eric Bouffard**<br>Gibson, Dunn & Crutcher LLP |

- 1 -

| | | |
|---|---|---|
| | | 16 avenue Matignon<br>75008 Paris<br>France<br>Tel: +33 (0) 1 56 43 13 00 \| Fax: +33 (0)1 56 43 13 33<br>Email: EBouffard@gibsondunn.com |
| 4. | Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | June 1, 2021 |

In conformity with Article 3 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), Federal Rule of Civil Procedure 28(b), and 28 U.S.C.A. 1781(b), the undersigned authority respectfully has the honor to submit the following request:

| | | |
|---|---|---|
| 5. | a. Requesting Judicial Authority (Article 3, a) | The Honorable Judge Alan D Albright, District Judge United States District Court for the Western District of Texas, Waco Division 800 Franklin Avenue Room 301 Waco, Texas 76701 USA |
| | b. To the competent Authority of (Article 3, a) | France |
| | c. Names of the case and any identifying number | *WSOU Investments LLC v. Dell Technologies Inc.* Case No. 6:20-cv-00476-ADA, United States District Court for the Western District of Texas |
| 6. | Names and addresses of the parties and their representative (including representatives in the requested State) (Article 3, b) | |
| | a. Plaintiffs | WSOU Investments LLC |

| | |
|---|---|
| Representatives | WSOU is represented by:<br><br>**Brett Aaron Mangrum**<br>Etheridge Law Group<br>2600 East Southlake Blvd., Suite 120-324<br>Southlake, TX 76092<br>469-401-2659<br>Fax: 817-887-5950<br>Email: brett@etheridgelaw.com<br><br>**Jeffrey Huang**<br>Etheridge Law Group PLLC<br>2600 East Southlake Blvd<br>Suite 120-324<br>Southlake, TX 76092<br>408-797-9059<br>Fax: 817-887-5950<br>Email: jhuang@etheridgelaw.com<br><br>**Ryan Scott Loveless**<br>Etheridge Law Group PLLC<br>2600 E Southlake Blvd<br>Suite 120-324<br>Southlake, TX 76092<br>972-292-8303<br>Fax: 817-887-5950<br>Email: ryan@etheridgelaw.com<br><br>**James L. Etheridge**<br>Etheridge Law Group, PLLC<br>2600 E. Southlake Blvd., Suite 120-324<br>Southlake, TX 76092<br>817-470-7249<br>Fax: 817-887-5950<br>Email: jim@etheridgelaw.com |
| b. Defendants | Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively "Defendants") |
| Representatives | Dell Technologies Inc., Dell Inc., and EMC Corporation are represented by:<br><br>Shelton Coburn LLP: |

| | | |
|---|---|---|
| | | **Barry K. Shelton**<br>Shelton Coburn LLP<br>311 RR 620 S<br>Suite 205<br>Austin, TX 78734-4775<br>512-263-2165<br>Fax: 512-263-2166<br>Email: bshelton@sheltoncoburn.com<br><br>The Defendant has appointed legal counsel in France to pursue and assist with the commission to take evidence. The details of the Defendant's legal counsel in France are:<br><br>**Eric Bouffard**<br>Gibson, Dunn & Crutcher LLP<br>16 avenue Matignon<br>75008 Paris<br>France<br>Tel: +33 (0) 1 56 43 13 00 \| Fax: +33 (0)1 56 43 13 33<br>Email: EBouffard@gibsondunn.com |
| | c. Other parties | N/A |
| | Representatives | N/A |
| 7. | a. Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (Article 3, c) | Civil action alleging patent infringement under the patent laws of the United States. |
| | b. Summary of complaint | Discovery sought in this Letter of Request is relevant in Case No. 6:20-cv-00476-ADA: In WSOU's complaint against Defendants, WSOU alleges that Defendants infringe U.S. Patent No. 7,565,435 ("the '435 patent"). |
| | c. Summary of defense and counterclaim | In defense against WSOU's claims of patent infringement of the '435 patent, Defendants assert, *inter alia*, that they do not infringe any of claims of the '435 patent and that the '435 patent is invalid. |

| | | |
|---|---|---|
| | | Alcatel-Lucent International has knowledge of the facts relevant to Defendants' defenses. Alcatel-Lucent International is relevant to the action by virtue of being a former assignee of the '435 patent. Alcatel-Lucent International holds critical facts to this case, including facts relevant to a number of defenses raised by Defendants and any potential damages, including information related to the prosecution of the '435 patent; prior uses and/or sales or products and services incorporating the '435 patent, publications related to the concepts claimed in the '435 patent; commercialization, production and/or commercial embodiments related to the '435 patent; the state of the art at the time of the alleged invention and/or filing of the applications related to the '435 patent; the ownership and financial interests in the '435 patent; conception, diligence and/or reduction to practice of the concepts claimed in the '435 patent; and the disclosure of the claimed invention of the asserted patent. As well as licensing of and/or agreements covering the '435 patent. And, financial knowledge including valuation and royalties associated with the '435 patent or any license and/or agreement covering the '435 patent; and other financial interests (including revenue, costs, expenses and profits) as well as financial interests and information related to the '435 patent. |
| | d. Other necessary information or documents | Alcatel-Lucent International's current address is: Route de Villejust Nokia Paris Saclay Nozay, 91620 France |
| 8. | a. Evidence to be obtained or other judicial act to be performed (Article 3d), | In order to present its defenses that the '435 patent is not infringed, invalid, and unenforceable and to determine any alleged damages, Defendants seek certain documents from Alcatel-Lucent International. Attached as Exhibit C1 is a request of production of certain documents that Defendants believe are likely to be in the possession, custody, or control of Alcatel-Lucent International. |

| | |
|---|---|
| | To further clarify the evidence sought, attached as Exhibit C2 is an outline of the topics and issues about which counsel for Defendants intend to inquire of Alcatel-Lucent International. |
| b. Purpose of the evidence or judicial act sought | With respect to the '435 patent, Alcatel-Lucent International has information and knowledge relating to the prosecution of the '435 patent; prior uses and/or sales or products and services incorporating the '435 patent, publications related to the concepts claimed in the '435 patent; commercialization, production and/or commercial embodiments related to the '435 patent; the state of the art at the time of the alleged invention and/or filing of the applications related to the '435 patent; the ownership and financial interests in the '435 patent; conception, diligence and/or reduction to practice of the concepts claimed in the '435 patent; and the disclosure of the claimed invention of the asserted patent. As well as licensing of and/or agreements covering the '435 patent. And, financial knowledge including valuation and royalties associated with the '435 patent or any license and/or agreement covering the '435 patent; and other financial interests (including revenue, costs, expenses and profits) as well as financial interests and information related to the '435 patent.<br><br>This evidence is directly relevant to Defendants' claims that the '435 patent is not infringed, invalid, and unenforceable and to determine any alleged damages under United States patent law. |
| 9. Identity and address of any person to be examined (Article 3, e) | Alcatel-Lucent International<br><br>Route de Villejust<br>Nokia Paris Saclay<br>Nozay, 91620<br>France |
| 10. Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3, f) | *See* Exhibit C2 |

| | | |
|---|---|---|
| 11. | Documents or other property to be inspected (Article 3, g) | *See* Exhibit C1 |
| 12. | Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | We respectfully request that the testimony be taken under oath. |
| 13. | Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (Article 3, i) and 9) | This Court respectfully requests that Alcatel-Lucent International be directed to produce the documents identified in attached Exhibit C1.<br><br>This Court respectfully requests that the Central Authority direct a representative of Alcatel-Lucent International to appear on or before June 1, 2021.<br><br>This Court respectfully requests that attorneys of the Defendant be permitted to examine and cross-examine a representative of Alcatel-Lucent International, and that the witness be directed to answer such questions, relating to matters outlined in attached Exhibit C2.<br><br>This Court respectfully requests that the examination be permitted to be conducted in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure to prevail in the event of a conflict.<br><br>This Court respectfully requests that the examination be (partially) conducted via video conference to allow U.S. counsel to join the hearing.<br><br>This Court respectfully requests that the testimony be video recorded and also transcribed verbatim.<br><br>This Court respectfully requests that the testimony be taken in English language if the examined person(s) agree, and that, if need be, simultaneous translation be provided.<br><br>Costs incurred in relation to the deposition examination (court reporter, video recorder, simultaneous translation) shall be at Defendants' expense. |

| 14. | Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | This Court respectfully requests that you notify this Court; the representatives of the parties as indicated above; the witness from whom evidence is requested as indicated above; and such other person(s) that you deem proper. |
|---|---|---|
| 15. | Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | No judicial personnel of the requesting authority will attend or participate. |
| 16. | Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | Defendants believe that Alcatel-Lucent International does not benefit from any privilege, and does not endorse the assertion of any such privilege or duty. |
| 17. | The fees and costs incurred will be borne by | Defendants will bear the reimbursable costs associated with this request in accordance with the provisions of the Hague Convention. |

So ORDERED and SIGNED this ____ day of _____, 2020.


_____
The Honorable Alan D Albright
 U.S. District Court Judge

# EXHIBIT C1

## DOCUMENTS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") request the production of the documents described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1. "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action. A copy of the Complaint in case number 6:20-cv-00476-ADA is attached as Exhibit C3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2. "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case number 6:20-cv-00476-ADA.

3. "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

4. "Asserted Patent" shall refer to U.S. Patent No. 7,565,435 and any patent applications related thereto.

5. "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

6. "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, as may be amended.

7. "Concerning," "refer(s) to," "related to," "reflecting," and "relating to" shall mean directly or indirectly relating to, referring to, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to,

supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

8. "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., and EMC Corporation, and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

9. "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34. Federal Rules of Civil Procedure 34 permits discovery of: "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

10. "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

11. "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

12. "Named Inventor" shall refer to any individual who is listed as an inventor on the Asserted Patent or any Related Patent or Related Application thereof.

13. "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

14. The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

15. "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

16. "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

17. "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

18. "Third Party" shall refer to any person other than Plaintiff or Defendants.

19. "You," "Your," "Yours" shall refer to Alcatel-Lucent International, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

20. "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

21. Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

22. The singular form of any word shall be construed to also include the plural, and vice-versa.

23. The word "each" shall be construed to mean "each and every."

24. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

25. The words "any" and "all" shall be construed to mean "any and all."

## INSTRUCTIONS

1. In responding to the document requests set forth below, please furnish all responsive and non-privileged information that is available to You.

2.      If production of any responsive Documents are being withheld on the ground of the attorney-client privilege, attorney work product, or any other privilege, immunity, or protection, please provide a privilege log with the following information for each such Document: (a) the name of the Document; (b) the name of the person(s) who prepared the Document; (c) the name of the person(s) to whom the Document was directed or circulated; (d) the date(s) on which the Document was prepared or transmitted; (e) the name of the person(s) now in possession of the Document; (f) a description of the subject matter of the Document; and (g) the specific nature of the privilege or protection claimed with respect to the Document.

3.      The Court's interim protective order in the Order Governing Proceedings entered in this manner shall govern the disclosure of confidential information in this Action. *See* Exhibit C4 at pp. 3–4.

4.      Upon entry of a final protective order in this manner that protective order shall govern the disclosure of confidential information in this Action.

## DOCUMENT REQUESTS

1.      Documents and Communications concerning the preparation, filing, or prosecution of any of the patent applications related to the Asserted Patent.[1] This includes, but is not limited to:

a.      A complete copy of the prosecution history and prosecution files for the

---

[1] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as prosecution history estoppel, non-infringement, invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement), and inequitable conduct. Such materials will also be relevant to defenses relating to damages, including the availability of non-infringing alternatives.

Asserted Patent;

b.　　Drafts of the patent applications, drawings, and documents in the possession, custody, or control of You or any attorney or agent involved in the prosecution of the Asserted Patent, except to the extent these documents are entitled to attorney-client privilege or work product protection;

c.　　Patents, patent applications, or other publications reviewed in connection with the prosecution by anyone who participated in the prosecution of the Asserted Patent;

d.　　Prior Art cited or considered in connection with the prosecution of the Asserted Patent;

e.　　Memoranda and Communications regarding the prosecution of the Asserted Patent; and

f.　　Documents referring or relating to or evidencing any decision by You, on Your behalf, or that you are aware of regarding what documents (including without limitation patents or printed publications) to cite during prosecution of the Asserted Patent.

2.　　Documents and Communications concerning the preparation, filing, or prosecution of any of the patent applications related to Related Patents and Related Applications.[2]

---

[2] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as prosecution history estoppel, non-infringement, invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement), and inequitable conduct. Such materials will also be relevant to defenses relating to damages, including the availability of non-infringing alternatives.

This includes, but is not limited to:

    a.    A complete copy of the prosecution histories and prosecution files for any Related Patents and Related Applications;

    b.    Drafts of patent applications, drawings, and documents in the possession, custody, or control of You or any attorney or agent involved in the prosecution of any Related Patents or Related Applications, except to the extent these documents are entitled to attorney-client privilege or work product protection;

    c.    Patents, patent applications, or other publications reviewed in connection with the prosecution by anyone who participated in the prosecution of any Related Patents or Related Applications;

    d.    Prior Art cited or considered in connection with the prosecution of any Related Patents or Related Applications;

    e.    Memoranda and Communications regarding the prosecution of any Related Patents or Related Applications; and

    f.    Documents referring or relating to or evidencing any decision by You, on Your behalf, or that you are aware of regarding what documents (including without limitation patents or printed publications) to cite during prosecution of any Related Patents or Related Applications.

3.    Documents and Communications related to each effort by You, on Your behalf, or that you are aware of to obtain patent protection, in the United States or in the countries designated in the PCT application for the Asserted Patent, for the subject matter described and/or claimed in the Asserted Patent, covering the period from December 20, 2003 through the last

action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[3]

4.     Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the conception of the subject matter described and/or claimed in the Asserted Patent, prior to December 20, 2003.[4]

5.     Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the testing, design, and development of the subject matter described and/or claimed in the Asserted Patent, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[5]

6.     Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the reduction to practice of the subject matter described and/or claimed in the Asserted Patent, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related

---

[3] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[4] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[5] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

Patent or Related Application.[6]

7.      Statements, articles, abstracts, publications, and Product literature made by, or under the direction of, any of the Named Inventors concerning the subject matter described and/or claimed in the Asserted Patent, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[7]

8.      Laboratory notebooks, technical memoranda, technical files, diaries, appointment calendars, and trip reports, in complete unredacted form, of the Named Inventors, or made under the direction of the Named Inventors, concerning the subject matter described and/or claimed in the Asserted Patent, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[8]

9.      Documents sufficient to identify any Person (whether or not named as an inventor) involved in the conception, research, testing, design, development, and reduction to practice of any element of any of the inventions described and/or claimed in the Asserted Patent, and to

---

[6]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[7]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[8]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

understand their role, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[9]

10.   Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the conception of the subject matter described and/or claimed in Related Patents or Related Applications, prior to December 20, 2003.[10]

11.   Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the testing, design, and development of the subject matter described and/or claimed in Related Patents or Related Applications, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[11]

12.   Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding the reduction to practice of the subject matter described and/or claimed in Related Patents or Related Applications, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted

---

[9] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[10] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

[11] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

Patent or any Related Patent or Related Application.[12]

13.     Statements, articles, abstracts, publications, and Product literature made by, or under the direction of, any of the Named Inventors concerning the subject matter described and/or claimed in Related Patents or Related Applications, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[13]

14.     Laboratory notebooks, technical memoranda, technical files, diaries, appointment calendars, and trip reports, in complete unredacted form, of the Named Inventors, or made under the direction of the Named Inventors, concerning the subject matter described and/or claimed in Related Patents or Related Applications, from December 20, 2003 to the last action taken by or on behalf of the inventor or any assignee in connection with the prosecution of the Asserted Patent or any Related Patent or Related Application.[14]

15.     Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums that concern or show the structure, functions, or operation of, or that constitute embodiments of, any invention disclosed or claimed in the Asserted Patent, regardless of whether

---

[12] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.
[13] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.
[14] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to defenses, such as improper inventorship, derivation, and inequitable conduct.

such embodiment was commercialized, and regardless of whether or not it worked properly, from December 20, 2003 to the present.[15]

16. Documents and Communications relating to Your assignment policies with inventors applicable to the invention described and/or claimed in the Asserted Patent.[16] This includes but is not limited to:

      a. Assignment agreements with the inventors of the inventions described and/or claimed in the Asserted Patent;

      b. Cost-sharing or profit-sharing agreements with the inventors of the inventions described and/or claimed in the Asserted Patent; and

      c. Remuneration agreements with inventors of the inventions described and/or claimed in the Asserted Patent.

17. Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums concerning any of the following activities with regard to the subject matter described and/or claimed in the Asserted Patent:

---

[15] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to defenses relating to damages, including the availability of non-infringing alternatives and failure to mark.

[16] Such materials will be relevant to issue regarding Plaintiffs standing to bring the current suit and joinder of the proper parties. Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "the character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119–20 (S.D.N.Y. 1970). Courts in the United States consider these *Georgia-Pacific* factors when determining a reasonable royalty for patent infringement damages. *See, e.g.*, *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1324–37 (Fed. Cir. 2009).

a. First written description and/or drawing of such subject matter;

b. First publication of such subject matter;

c. First promotion of such subject matter;

d. First advertisement of such subject matter;

e. First offer for sale of such subject matter;

f. First sale of such subject matter;

g. First public disclosure of such subject matter;

h. First public use of such subject matter;

i. Experimental uses or alleged experimental uses of such subject matter.[17]

18. Documents concerning the making, using, testing, selling, or disclosure, anywhere in the world, of any embodiment described and/or claimed in the Asserted Patent, or any Product, process, equipment, or service embodying or using such invention, prior to December 20, 2003.[18]

19. Documents relating to any Prior Art search performed by You, on Your behalf, or that you are aware of, relating to the Asserted Patent, including, but not limited to, any search methodology or results, from December 20, 2003 to December 22, 2017.[19]

20. Documents relating to any Prior Art search performed by You, on Your behalf, or that you are aware of, relating to any Related Patent or Related Application, including, but not

---

[17] Such materials will be relevant to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, and anticipation) and inequitable conduct.
[18] Such materials will be relevant to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, and anticipation) and inequitable conduct.
[19] Such materials will be relevant to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, and anticipation) and inequitable conduct.

limited to, any search methodology or results, from November 30, 2006 to December 22, 2017.[20]

21. Communications, studies, comparisons, reports, surveys, evaluations, opinions, or memorandums regarding whether any claim in the Asserted Patent is invalid, valid, enforceable, or unenforceable (including any Prior Art or alleged Prior Art), from December 20, 2003 to December 22, 2017.[21]

22. Documents that concern the commercial success (a secondary consideration regarding obviousness of the Asserted Patent as considered under 35 U.S.C. § 103) of any Product, process, equipment, or service that has a nexus to any invention claimed in the Asserted Patent (i.e., the Product, process, equipment, or service is "essentially the claimed invention"[22]), from December 20, 2003 to December 22, 2017.[23]

23. Documents that concern any copying by others (a secondary consideration regarding obviousness of the Asserted Patent as considered under 35 U.S.C. § 103) of any invention claimed in the Asserted Patent, or of any Product, process, equipment, or service that

---

[20] Such materials will be relevant to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, and anticipation) and inequitable conduct.

[21] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement) and inequitable conduct.

[22] *Fox Factory, Inc. v. SRAM, LLC*, 944 F. 3d 1366, 1374 (Fed. Cir. 2019).

[23] Such materials will be relevant to defenses, such as invalidity (including obviousness and secondary considerations regarding obviousness). Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "the character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119–20 (S.D.N.Y. 1970). Courts in the United States consider these *Georgia-Pacific* factors when determining a reasonable royalty for patent infringement damages. *See, e.g.*, *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1324–37 (Fed. Cir. 2009).

embodies or uses such invention, from December 20, 2003 to December 22, 2017.[24]

24. Documents that concern any third party's praise, criticism, acknowledgments, awards, or discussion of the significance (a secondary consideration regarding obviousness of the Asserted Patent as considered under 35 U.S.C. § 103) of any invention claimed in the Asserted Patent, or of any Product, process, equipment, or service that embodies or uses such invention, from December 20, 2003 to December 22, 2017.[25]

25. Communications (or Documents relating thereto) between You and Plaintiff, from November 30, 2006 to the present, relating to:

    a. The Asserted Patent, Related Patents, Related Applications, or any inventions disclosed therein;

    b. This Action (including, without limitation, the initiation of this Action and the actual or anticipated costs, profits, and outcome of this Action); and

    c. Any Defendant, any of Defendants' technology, or any of the Accused Products.[26]

26. Communications (or Documents relating thereto) between You and any of the Named Inventors, from November 30, 2006 to the present, relating to:

    a. The Asserted Patent, Related Patents, Related Applications, or any

---

[24] Such materials will be relevant to defenses, such as invalidity (including obviousness and secondary considerations regarding obviousness).

[25] Such materials will be relevant to defenses, such as invalidity (including obviousness and secondary considerations regarding obviousness).

[26] Such materials will be relevant to quantifying any alleged damages. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

inventions disclosed therein;

    b.    This Action (including, without limitation, the initiation of this Action and the actual or anticipated costs, profits, and outcome of this Action); and

    c.    Any Defendant, any of Defendants' technology, or any of the Accused Products.[27]

27.    Negotiations, **agreements**, draft **agreements** between You and Plaintiff, from November 30, 2006 to the present, relating to:

    a.    The Asserted Patent, Related Patents, Related Applications, or any inventions disclosed therein;

    b.    This Action (including, the initiation of this Action and the actual or anticipated costs, profits, and outcome of this Action); or

    c.    Any Defendant, any of Defendants' technology, or any of the Accused Products.[28]

28.    Negotiations, **agreements**, draft **agreements** between You and any Named Inventor, from November 30, 2006 to the present, relating to:

    a.    The Asserted Patent, Related Patents, Related Applications, or any

---

[27] Such materials will be relevant to quantifying any alleged damages. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[28] Such materials will be relevant to quantifying any alleged damages. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

inventions disclosed therein;

b.      This Action (including the initiation of this Action and the actual or anticipated costs, profits, and outcome of this Action); or

c.      Any Defendant, any of Defendants' technology, or any of the Accused Products.[29]

29.      Documents and Communications concerning any statement, concern, or contention by You, any Named Inventor, or any person involved in the prosecution of the Asserted Patent, regarding the scope of any of the claims or the interpretation or construction of any term or phrase in the claims of the Asserted Patent, from December 20, 2003 to December 22, 2017.[30]

30.      Documents concerning the alleged infringement of any of the claims of the Asserted Patent, including studies, comparisons, reports, surveys, and any evaluation, opinion, memorandum, or report, comparing any of the Accused Products or any portion, feature, and/or aspect thereof to any limitation in any claim of the Asserted Patent, from December 20, 2003 to December 22, 2017, except to the extent these documents are entitled to attorney-client privilege or work product protection.[31]

31.      Documents and Communications concerning any decision to pursue or not to

---

[29] Such materials will be relevant to quantifying any alleged damages. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[30] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement) and inequitable conduct.

[31] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement.

pursue a claim infringement of the Asserted Patent against any Defendant, from December 20, 2003 to December 22, 2017, except to the extent these documents are entitled to attorney-client privilege or work product protection.[32]

32. Documents and Communications concerning any decision to pursue or not to pursue a claim infringement of any Related Patent against any Defendant, from December 20, 2003 to December 22, 2017, except to the extent these documents are entitled to attorney-client privilege or work product protection.[33]

33. Documents comprising or memorializing any sworn statements, including affidavits, declarations, trial and deposition testimony related to the subject matter of the Asserted Patent, by any of the Named Inventors or any person involved in the prosecution of the Asserted Patent.[34]

34. Documents comprising or memorializing any sworn statements, including affidavits, declarations, trial and deposition testimony related to the subject matter of any Related Patents or Related Applications, by any of the Named Inventors or any person involved in the prosecution of the Asserted Patent.[35]

---

[32] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the "commercial relationship between the licensor and licensee"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[33] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the "commercial relationship between the licensor and licensee"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[34] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement) and inequitable conduct.

[35] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement) and inequitable conduct.

35.     Documents and Communications, relating to or concerning the assignment, licensing, acquisition, financial interest, security interest, sale, transfer of rights (in whole or in part), or any other disposition of, or any offers to buy, sell, or license the Asserted Patent or any Related Patents or Related Applications.[36]  This includes, but is not limited to:

a.      Agreements granting rights, assignments, licenses, covenants, royalties, settlements, agreements releasing any third party from liability for infringement, and covenants not to sue, involving or concerning the Asserted Patent, Related Patents, or Related Applications;

b.      Negotiations, discussions, or other Communications relating to the Documents referenced in sub-paragraph a; and

c.      Communications (or documents relating thereto) between You and any potential Licensee or purchaser of the Asserted Patent, Related Patents or Related Applications. Documents and Communications concerning or relating to any right, title, or interest in any litigation or action involving any of the Asserted Patent, including analyses or opinions related thereto.[37]

---

[36] Such materials will be relevant to license exhaustion defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[37] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor" and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

36. Documents and Communications concerning or relating to any right, title, or interest in any litigation or action involving any of the Asserted Patent, including analyses or opinions related thereto.[38]

37. Documents and Communications concerning or relating to any right, title, or interest in any litigation or action involving any of Related Patents or Related Applications, including analyses or opinions related thereto.[39]

38. Studies, comparisons, reports, surveys, evaluations, opinions, or memorandums, regarding ownership of the Asserted Patent, from November 30, 2006 to December 22, 2017.[40]

39. Studies, comparisons, reports, surveys, evaluations, opinions, or memorandums, regarding any standstills involving or concerning the Asserted Patent, from November 30, 2006 to December 22, 2017.[41]

---

[38] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor" and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[39] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor" and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[40] Such materials will be relevant to license exhaustion defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[41] Such materials will be relevant to license exhaustion defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents

40.     Studies, comparisons, reports, surveys, evaluations, opinions, or memorandums, regarding sales, royalties, covenants, or licenses involving or concerning the Asserted Patent, from November 30, 2006 to December 22, 2017.[42]

41.     Documents and Communications concerning any business plans, marketing plans, marketing efforts, advertising plans, advertising efforts, promotional programs, or offers for sale, involving or concerning the Asserted Patent, from November 30, 2006 to December 22, 2017.[43]

42.     Studies, comparisons, reports, surveys, evaluations, opinions, or memorandums, regarding ownership of Related Patents or Related Applications, from November 30, 2006 to December 22, 2017.[44]

---

comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[42] Such materials will be relevant to license exhaustion defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[43] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[44] Such materials will be relevant to license exhaustion defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents

43.     Studies, comparisons, reports, surveys, evaluations, opinions, or memorandums, regarding any standstills involving or concerning Related Patents or Related Applications, from November 30, 2006 to December 22, 2017.[45]

44.     Studies, comparisons, reports, surveys, evaluations, opinions, or memorandums, regarding sales, royalties, covenants, or licenses involving or concerning Related Patents or Related Applications, from November 30, 2006 to December 22, 2017.[46]

45.     Documents and Communications concerning any business plans, marketing plans, marketing efforts, advertising plans, advertising efforts, promotional programs, or offers for sale, involving or concerning Related Patents or Related Applications, from November 30, 2006

---

comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[45] Such materials will be relevant to license exhaustion defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

[46] Such materials will be relevant to license exhaustion defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20. Such materials will also be relevant to defenses, such as non-infringement and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

to December 22, 2017.[47]

46. Documents and Communications concerning any budgets, forecasts, revenues, licensing strategies, projections, costs, sales, expenses, margins, profits (including gross and net profits), or any other means for generating revenue from any Product, process, equipment, or service that You allege or believe embodies any claim of the Asserted Patent, from November 30, 2006 to present.[48]

47. Documents related to the relationship between You and potential or actual Licensees regarding the Asserted Patent, including agreements and draft agreements with such potential Licensees, Communications with such potential Licensees, and Documents exchanged with such potential Licensees that relate to such patents.[49]

48. Documents related to the relationship between You and potential or actual Licensees regarding the Related Patents or Related Applications, including agreements and draft agreements with such potential Licensees, Communications with such potential Licensees,

---

[47] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[48] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[49] Such materials will be relevant to patent exhaustion and license defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

and Documents exchanged with such potential Licensees that relate to such patents.[50]

49.     Documents reflecting any analyses or projections regarding the financial impact and duration thereof on You or any other assignee or Licensee due to the alleged infringement of the Asserted Patent, from November 30, 2006 to December 22, 2017.[51]

50.     Valuations of the Asserted Patent (either alone, or together with other patents or consideration, including as part of an intellectual property portfolio), from November 30, 2006 to December 22, 2017.[52]

51.     Valuations of the Related Patents or Related Applications (either alone, or together with other patents or consideration, including as part of an intellectual property portfolio), from November 30, 2006 to December 22, 2017.[53]

---

[50] Such materials will be relevant to patent exhaustion and license defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[51] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[52] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[53] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial

52.     Documents and Communications concerning or relating to an appraisal or valuation of any license, covenant, royalty, technology transfer, or authorization-to-use agreement that relates to the Asserted Patent, including appraisals or valuations performed for tax purposes, from November 30, 2006 to December 22, 2017.[54]

53.     Documents and Communications concerning or relating to any right, title, or interest in any litigation or action involving any of the Asserted Patent, Related Patents, or Related Applications, including analyses or opinions related thereto, from November 30, 2006 to December 22, 2017.[55]

54.     Documents sufficient to identify any licensing policy that You may have, including without limitation policies and practices relating to taking or granting licenses, relating to any of the Asserted Patent, Related Patents, or Related Applications.[56]

55.     Documents and Communications concerning whether You and/or Your Licensees

---

embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[54] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[55] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor" and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[56] Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the "licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly", among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

have complied with the marking or notice provisions of 35 U.S.C. § 287(a)[57] with respect to the Asserted Patent, including but not limited to one copy or sample of each and every Product and/or package or other material on which the patent number of the Asserted Patent has been or are marked.[58]

56.    Documents sufficient to identify, and to show the design, operation, or functioning of, any commercially acceptable, non-infringing (potential or actual) alternative to the subject matter claimed in the Asserted Patent, after July 21, 2009.[59]

57.    Documents sufficient to identify, and to show the design, operation, or functioning of any technically acceptable, non-infringing (potential or actual) alternative to the subject matter claimed in the Asserted Patent, after July 21, 2009.[60]

58.    Documents sufficient to identify the nature and scope of any rights in the Asserted Patent that You have obtained and/or retained at any time, including, without limitation, any right to control litigation, future royalties, payments for licenses of the Asserted Patent, or payments

---

[57] 35 U.S.C. § 287(a) states: "Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

[58] Such materials will be relevant to defenses relating to damages, including failure to mark.

[59] Such materials will be relevant to defenses relating to damages, including the availability of non-infringing alternatives.

[60] Such materials will be relevant to defenses relating to damages, including the availability of non-infringing alternatives.

relating to or resulting from the outcome of any litigation involving or relating to the Asserted Patent (including without limitation the Action).[61]

59. Documents and Communications exchanged with any trade associations, standards setting organizations, or industry working groups, relating to the Asserted Patent, or the inventions disclosed therein, from November 30, 2006 to the present.[62]  This includes but is not limited to:

    a.    Communications with trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, or the inventions disclosed therein;

    b.    Technical and non-technical submissions to trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, or the inventions disclosed therein;

    c.    Intellectual property declarations to any trade associations, standards setting organizations, or industry trade groups relating to the Asserted Patent, or the inventions disclosed therein;

---

[61]  Such materials will be relevant to issue regarding Plaintiffs standing to bring the current suit and joinder of the proper parties.  Such materials will be relevant to patent exhaustion and license defenses, as well as, to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the:  "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[62]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

d.      Documents related to trade associations, standards setting organizations, or industry trade groups meetings (including working group meetings) where the subject matter described and/or claimed in the Asserted Patent, was discussed.

60.     Documents and Communications exchanged with any trade associations, standards setting organizations, or industry working groups, relating to Related Patents, Related Applications, or the inventions disclosed therein, from November 30, 2006 to the present.[63]  This includes but is not limited to:

a.      Communications with trade associations, standards setting organizations, or industry trade groups relating to Related Patents, Related Applications, or the inventions disclosed therein;

b.      Technical and non-technical submissions to trade associations, standards setting organizations, or industry trade groups relating to Related Patents, Related Applications, or the inventions disclosed therein;

c.      Intellectual property declarations to any trade associations, standards setting organizations, or industry trade groups relating to Related Patents, Related Applications, or the inventions disclosed therein;

d.      Documents related to trade associations, standards setting organizations, or industry trade groups meetings (including working group meetings) where the subject matter described and/or claimed in  Related Patents was

---

[63]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).

discussed.

61.    Documents (including without limitation correspondence, notes, meeting minutes, proposals, statements, and other Communications) regarding what constitutes Fair Reasonable and Non-Discriminatory ("FRAND") or Reasonable and Non-Discriminatory ("RAND") terms relating to patent licensing in the technical space related to the subject matter of the Asserted Claims.[64]

62.    Documents sufficient to identify all sections and/or subsection of any standard or draft standard to which You believe the Asserted Patent are essential.[65]

63.    Documents sufficient to identify all sections and/or subsection of any standard or draft standard to which You believe the Asserted Patent is relevant to.[66]

---

[64]  Such materials will be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; "portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[65]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[66]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents

64.     Agreements that You have concerning patents declared essential to or any standard related to the subject matter of the Asserted Patent, such as standards maintained by the Institute of Electrical and Electronics Engineers, Internet Engineering Task Force, and the European Telecommunications Standards Institute.[67]

65.     Agreements that You have concerning patents that You contend are relevant to standards related to the subject matter of the Asserted Patent, such as standards maintained by the Institute of Electrical and Electronics Engineers, Internet Engineering Task Force, and the European Telecommunications Standards Institute.[68]

66.     Documents sufficient to identify patents of which You are aware that have been contented to be essential to, or relevant to, standards or draft standard for which the Asserted

---

comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[67]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

[68]  Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement).  Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things.  *Georgia-Pacific*, 318 F. Supp. at 1119–20.

Patent has been contented to be essential to, or relevant to, such as standards maintained by the Institute of Electrical and Electronics Engineers, Internet Engineering Task Force, and the European Telecommunications Standards Institute.[69]

67. Documents sufficient to show Your past and present electronic data and Document destruction and retention policies with respect to the Documents produced in response to the above requests.

---

[69] Such materials will be relevant to determining the scope of the patents in claim construction and to defenses, such as non-infringement, and invalidity (including obviousness, secondary considerations regarding obviousness, anticipation, patent-eligibility, written description, indefiniteness, and enablement). Such materials will also be relevant to quantifying any alleged damages pursuant the *Georgia-Pacific* factors, which require consideration of the: "royalties received by the patentee"; "rates paid by the licensee for the use of other patents comparable to the patent in suit"; "established profitability of the product made under the patent"; "character of the commercial embodiment of it as owned and produced by the licensor"; and "portion of the realizable profit that should be credited to the invention"; among others things. *Georgia-Pacific*, 318 F. Supp. at 1119–20.

# EXHIBIT C2

## ORAL EXAMINATION TOPICS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") seek to ask questions on topics described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1.  "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action. A copy of the Complaint in case number 6:20-cv-00476-ADA is attached as Exhibit C3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2.  "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case number 6:20-cv-00476-ADA.

3.  "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

4.  "Asserted Patent" shall refer to U.S. Patent No. 7,565,435 and any patent applications related thereto.

5.  "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

6.  "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, as may be amended.

7.  "Concerning," "refer(s) to," "related to," "reflecting," and "relating to" shall mean directly or indirectly relating to, referring to, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to,

supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

8. "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., and EMC Corporation, and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

9. "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34. Federal Rules of Civil Procedure 34 permits discovery of: "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

10. "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

11. "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

12. "Named Inventor" shall refer to any individual who is listed as an inventor on the Asserted Patent or any Related Patent or Related Application thereof.

13. "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

14. The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

15. "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

16. "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

17. "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

18. "Third Party" shall refer to any person other than Plaintiff or Defendants.

19. "You," "Your," "Yours" shall refer to Alcatel-Lucent International, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

20. "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

21. Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

22. The singular form of any word shall be construed to also include the plural, and vice-versa.

23. The word "each" shall be construed to mean "each and every."

24. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

25. The words "any" and "all" shall be construed to mean "any and all."

**INSTRUCTIONS**

1. This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2.     It is Your duty in responding to this request to designate one or more officers, directors, managing agents, or other Persons who are the most knowledgeable with respect to the topics identified below.

## DEPOSITION TOPICS

1.     The alleged invention(s) claimed in each Asserted Claim, and the alleged benefits, advantages, disadvantages or limitations of those alleged invention(s) as compared to the state of the art at the time of filing, and the factual bases thereof.

2.     The inventorship of each Asserted Claim, including identification of any individuals other than the Named Inventors who aided or participated in the conception, reduction to practice, or diligence toward reduction to practice of the subject matter of the Asserted Claims.

3.     The role of each Named Inventor, as well as any individual identified pursuant to Topic No. 2, in the alleged invention of each Asserted Claim, including conception, diligence and reduction to practice, and including the subject matter to which each Person contributed, and the dates and circumstances in which each Named Inventor, as well as any individual identified pursuant to Topic No. 2, made such contributions.

4.     The conception, reduction to practice, and diligence toward the reduction to practice of each Asserted Claim, and any corroboration thereof.

5.     The dates and circumstances concerning any first disclosure, demonstration, sale or offer for sale of any prototype or commercial embodiment of any of the inventions claimed in the Asserted Claims, and the identification and subject matter of any documents relating to or referring to each such activity.

6.     The past and current ownership of the Asserted Patent, including its chain of title.

7. The preparation and prosecution of the applications relating to the Asserted Patent, any Related Patents, Related Applications, and patents and applications incorporated by reference into the Asserted Patent, and any certificates of correction.

8. The state of the art at the time of filing for the Asserted Patent, any Related Patents, Related Applications, and patents and applications incorporated by reference into the Asserted Patent, and Your knowledge thereof.

9. Any facts, studies, investigations, information, documents (including Prior Art), and analyses You identified, received, or knew at any time relating to the alleged validity, enforceability, infringement, valuation, or priority dates of the Asserted Patent, Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent, including any Communications with third parties relating to the foregoing.

10. Any facts, studies, investigations, information, documents, and analyses regarding the structure, functions, development of, or operation of, or that constitute embodiments of, any alleged invention disclosed or claimed in the Asserted Patent, regardless of whether such embodiment was commercialized, and regardless of whether or not it worked properly.

11. Any attempts to sell or otherwise transfer financial interests in the Asserted Patent, any portfolio of patents containing the Asserted Patent, or any patents related to the subject matter of the Asserted Claims.

12. The timing and circumstances related to Your first knowledge or awareness of any alleged infringement of the Asserted Patent by each of the Defendants.

13. Any decision to pursue or not to pursue a claim infringement of any of the claims of the Asserted Patent against any Defendant.

14. Any efforts by You, any predecessor-in-interest of the Asserted Patent, or any other Person to enforce or license the Asserted Patent, or any portfolio of patents containing the Asserted Patent, or any patents related to the subject matter of the Asserted Claims.

15. Your policies and practices concerning patent agreements (including licensing), including:

    a.     any written licensing policies or best practices;

    b.     any most favored Licensee;

    c.     the economic and technical factors considered by You in drafting and entering into any license, royalties, standstill or settlement agreements;

    d.     any standard or preferred terms for license, royalty, standstill or settlement agreements;

    e.     the process by which You determine the nature, scope and terms of license agreements in which You are a licensor; and

    f.     any circumstance in which You deviated from such policies.

16. Your knowledge of, and participation in, any Communications between Plaintiff and Defendants prior to the filing of the Action.

17. Any Communications related to Plaintiff, including communications related to licensing of any patents related the subject matter of the Asserted Claims, including the Asserted Patent, Related Patents, and Related Applications, compensation, license rates, royalties related thereto, agreements with Plaintiff, Defendants, the Action, the decision to file the Action, requests or offers to provide assistance, witnesses and/or documents for use in the Lawsuit, and any discussion about standing of Plaintiff to bring the Action.

18. Your relationship with all potential Licensees, including all agreements,

assurances, covenants not to sue, and understandings not to assert patents against such potential Licensees, including but not limited to Communications and agreements relating to the Asserted Patent, Related Patents or Related Applications, and the circumstances relating to such activity.

19.     Your relationship with any entity associated with Stuart A. Shanus, Marc Wade, and/or Craig Etchegoyen, including without limitation Wade and Company, Orange Holdings, WSOU, and/or Uniloc USA, Inc.,[1] including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of the Asserted Claims.

20.     Any Communication You engaged in regarding each Defendant and its respective products or services, and any analysis You performed of each Defendant and its respective products and services related to the Asserted Patent, Related Patents or Related Applications.

21.     Any valuations of the Asserted Patent or any portfolio of patents that includes the Asserted Patent.

22.     Any licenses, assignments, conveyances, security interests, or other agreements relating to the Asserted Patent, or any portfolio of patents that includes or included the Asserted Patent, and negotiations leading to and circumstances surrounding such agreement.

23.     Any revenues and profits received by You for any products practicing the alleged invention of the Asserted Patent.

24.     Revenues, costs, expenses, and profits (including gross and net profits) generated in connection with Your ownership of, the Asserted Patent, and the methodology used to calculate or otherwise determine revenues, costs, expenses, and/or profits.

---

[1]  Stuart A. Shanus and Craig Etchegoyen are the Chairman and President of WSOU.  Mark Wade, Wade and Company, Orange Holdings, and/or Uniloc USA, Inc. are all related persons or entities of WSOU.

25.     Any licensing fees and rates paid to You for each portfolio that includes the Asserted Patent.

26.     The rates paid by any Licensee to You for the use of other patents comparable to the Asserted Patent.

27.     Any financial interests that You may have in the Asserted Patent, including but not limited to royalties and the outcome of the Action.

28.     Any facts, studies, investigations, and analyses relating to any submission of intellectual property right declarations with respect to the Asserted Patent to any standard maintained by an international and/or domestic trade association or standards setting organization, including all analyses or opinions related thereto.

29.     Any facts, studies, investigations, and analyses relating to any alleged essentiality of the Asserted Patent to any industry standard, including any Communications with third parties relating to the foregoing.

30.     Any investigation of the standards activity and intellectual property right disclosures of any predecessor-in-interest to the Asserted Patent, including any investigation by You into the intellectual property right policies, Fair Reasonable and Non-Discriminatory ("FRAND") obligations, or Reasonable and Non-Discriminatory ("RAND") terms relating to patent licensing in the technical space related to the subject matter of the Asserted Claims.

31.     The role of You and/or any prior owner of the Asserted Patent, or any affiliates of You, or a prior owner of the Asserted Patent, in any standards setting organization from December 20, 2003 to present.

32.     Any Communications that You, any predecessor-in-interest of the Asserted Patent, and/or any Named Inventors had with an international and/or domestic trade association

or standards setting organizations regarding the subject matter of the Asserted Claims.

33. Any disclosures made by or on behalf of You or any predecessor-in-interest of the Asserted Patent to an international and/or domestic trade association or standards setting organization regarding the existence and/or potential standard essentiality of the Asserted Patent, Related Patents, or Related Applications.

34. Your knowledge of, and compliance with, intellectual property right policies of an international and/or domestic trade association or standards setting organization related to the subject matter of the Asserted Claims.

35. Your knowledge of, and compliance with, FRAND and/or RAND obligations, including without limitation any policies, guidelines, or instructions, and any related analysis or discussions.

36. Your collection, retention and production of documents and information relevant to the Action, including but not limited to:

    a. Your production of documents and information to Defendants, either directly or indirectly through Plaintiff;

    b. Your efforts to identify, locate and gather documents for production, including identification of custodians;

    c. the storage types and physical location of relevant data;

    d. a description of all sources containing the information which has been produced by You, including custodians thereof; and

    e. all databases and email systems containing information or documents relevant to the Action and produced, referenced, created or used through the present, and operation of such systems or databases, including ability to

search, storage, retrieving, backup, archiving, cataloguing, and the identity of Persons responsible for administering those databases and/or email systems.

37.     The subject matter and content of all Documents and Communications identified and/or produced in response to the above requests.

38.     The authenticity of all Documents identified in response to the requests for production.

39.     All Documents reviewed by You in connection with the deposition on these topics.

40.     For each of the topics set forth in this request, the identity and location of Your employee, agent, representative, independent contractor, or other partner, affiliate, or business associate, with the most knowledge concerning that topic.

# EXHIBIT C3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-476-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | § § § § | |
| Defendants. | § § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

## <u>NATURE OF THE ACTION</u>

1.     This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

## <u>THE PARTIES</u>

2.     Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.     On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.  Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5.      On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

<u>**JURISDICTION AND VENUE**</u>

6.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 7,565,435

10.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.     On July 21, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,565,435 ("the '435 Patent"), entitled "Method for Obtaining the Best Connectivity Achievable Within Virtual Local Area Networks." A true and correct copy of the '435 Patent is attached as Exhibit A to this Complaint.

12.     Brazos is the owner of all rights, title, and interest in and to the '435 Patent, including the right to assert all causes of action arising under the '435 Patent and the right to any remedies for the infringement of the '435 Patent.

13.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, networking

switches, including but not limited to, PowerSwitch N Series switches (collectively, the "Accused Products").

14.     The Accused Products support bridging using the Multiple Spanning Tree (MSTP) protocol.   In an MSTP-based computer network, they may be configured to have bridge ports communicating by forwarding data frames to bridge ports found in other network devices.

Dell EMC PowerSwitch N Series

…



Overview

Dell EMC N series is a family of energy-efficient, cost-effective 1GbE, 2.5GbE, 5GbE and 10GbE Open Networking switches designed for modernizing and scaling campus networks. Customer's choice includes Dell EMC enterprise-class layer 2, layer 3 feature set with OS 6 or select third-party network operating systems. Delivering a great choice of number of PoE and number of ports, they are ideal for powering wireless access points, voice over IP phones, surveillance cameras, building automation and Internet of Things.

https://www.dell.com/support/article/us/en/04/sln316270/dell-emc-powerswitch-n-series

How to manage Multiple Spanning Tree (MSTP) using Command Line on Dell Networking PowerConnect Campus Switches

…

Dell Networking PowerConnect switches support up to 8 instances of MSTP. Dell Networking N Series switches will support up to 16 instances of MSTP.

https://www.dell.com/support/article/en-us/how10525/how-to-manage-multiple-spanning-tree-mstp-using-command-line-on-dell-networking-powerconnect-campus-switches?lang=en

## Spanning Tree Protocol Features

…

### Multiple Spanning Tree

Multiple Spanning Tree (MSTP) operation maps VLANs to spanning tree instances. Packets assigned to various VLANs are transmitted along different paths within MSTP Regions (MST Regions). Regions are one or more interconnected MSTP bridges with identical MSTP settings. The MSTP standard lets administrators assign VLAN traffic to unique paths.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf



**Figure 22-1.   Small Bridged Network**

Assume that Switch A is elected to be the Root Bridge, and Port 1 on Switch B and Switch C are calculated to be the root ports for those bridges, Port 2 on Switch B and Switch C would be placed into the Blocking state. This creates a loop-free topology. End stations in VLAN 10 can talk to other devices in VLAN 10, and end stations in VLAN 20 have a single path to communicate with other VLAN 20 devices.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

15.    The Accused Products may be configured with multiple spanning-tree instances (MSTIs) having a topology covering the topology of desired virtual local area networks (VLANs).



Figure 22-2.    Single STP Topology

For VLAN 10 this single STP topology is fine and presents no limitations or inefficiencies. On the other hand, VLAN 20's traffic pattern is inefficient. All frames from Switch B will have to traverse a path through Switch A before arriving at Switch C. If the Port 2 on Switch B and Switch C could be used, these inefficiencies could be eliminated. MSTP does just that, by allowing the configuration of MSTIs based upon a VLAN or groups of VLANs. In this simple case, VLAN 10 could be associated with Multiple Spanning Tree Instance (MSTI)1 with an active topology similar to Figure 22-2 and VLAN 20 could be associated with MSTI 2 where Port 1 on both Switch A and Switch B begin discarding and all others forwarding. This simple modification creates an active topology with a better distribution of network traffic and an increase in available bandwidth.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf



https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e7537
96699e/original.pdf

16.     The Accused Products assign a VLAN membership on ports to create a VLAN member set which is part of the active spanning tree protocol topology. Further, the active VLAN member sets indicate the ports within one of the MTSIs for forwarding data traffic destined to members of the associated VLAN.

**Virtual Local Area Network Supported Features**

…

> The switch supports the Generic Attribute Registration Protocol (GARP). GARP VLAN Registration Protocol (GVRP) relies on the services provided by GARP to provide IEEE 802.1Q-compliant VLAN pruning and dynamic VLAN creation on 802.1Q trunk ports. When GVRP is enabled, the switch registers and propagates VLAN membership on all ports that are part of the active spanning tree protocol topology.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

**Configuring VLANs (Web)**

…

> The **VLAN Membership** tables display which Ports and LAGs are members of the VLAN, and whether they're tagged (T), untagged (U), or forbidden (F). The tables have two rows: **Static** and **Current**. Only the **Static** row is configurable. The **Current** row is updated either dynamically through GVRP or when the **Static** row is changed and **Apply** is clicked.
>
> There are two tables on the page:
>
> • **Ports** — Displays and assigns VLAN membership to ports. To assign membership, click in **Static** for a specific port. Each click toggles between U, T, and blank. See Table 21-7 for definitions.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

17.     The Accused Products may be configured to set a relatively higher path cost of one of the ports of a device within the MSTI (for example when the port is not part of a member set or so as to discourage data frames from forwarding on the non-VLAN membership ports) and set a

relatively low path cost(for example, to promote forwarding of traffic data from designated or active ports).

**Spanning Tree Protocol Features**

...

**Spanning Tree Port Settings**

The STP feature supports a variety of per-port settings including path cost, priority settings, Port Fast mode, STP Root Guard, Loop Guard, TCN Guard, and Auto Edge. These settings are also configurable per-LAG.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e7537 96699e/original.pdf

**MSTP with Multiple Forwarding Paths**

Consider the physical topology shown in Figure 22-4. It might be assumed that MSTI 2 and MSTI 3 would follow the most direct path for VLANs 20 and 30. However, using the default path costs, this is not the case. MSTI operates without considering the VLAN membership of the ports. This results in unexpected behavior if the active topology of an MSTI depends on a port that is not a member of the VLAN assigned to the MSTI and the port is selected as root port. In this configuration, port TE 1/0/11 is selected as the root port and ports TE1/0/12 and TE1/0/13 are blocked. To resolve the issue, set the port path cost of the directly connected links to allow the MSTIs to connect directly.

**Figure 22-4.   MSTP with Multiple Forwarding Paths**



https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

To support the redundant link using VLAN 200 running in MST instance 2 across gi1/0/8, configure the peer link with a high path cost for instance 2 on the primary switch to discourage forwarding across the peer link. Likewise, on the MLAG secondary switch, set the bridge priority to 0 for instance 2 to encourage the secondary switch to select the root path. Be sure to name the MST domain.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

**How Does STP Work?**

…

After the root bridge is elected, each switch finds the lowest-cost path to the root bridge. The port that connects the switch to the lowest-cost path is the root port on the switch. The switches in the spanning tree also determine which ports have the lowest-path cost for each segment. These ports are the designated ports. Only the root ports and designated ports are placed in a forwarding state to send and receive traffic. All other ports are put into a blocked state to prevent redundant paths that might cause loops. Both internal and external path costs can be configured. For STP, RSTP, and the MSTP CIST, only the external path costs are utilized in the lowest path cost calculation. The internal path cost is used by the MST instances.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

18.     The Accused Products may set a path cost for a forwarding port based on port speed.

**Configuring STP Interface Settings**                …

| spanning-tree cost *cost* | Specify the spanning tree path cost for the port. (Range: 0–200,000,000). The default cost is 0, which signifies that the cost is automatically calculated based on port speed. |
| --- | --- |

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

19.     The Accused Products support a DirectLink Rapid Convergence feature, which reestablishes connectivity in one of the MSTIs experiencing failure by activating links which ensure that the connectivity within the VLAN mapped in a MSTI is not lost.

**DirectLink Rapid Convergence**
The DirectLink Rapid Convergence (DRC) feature is designed for an access-layer switch that has redundant blocked uplinks. It operates on ports blocked by spanning tree. DRC can be configured for the entire switch; it cannot be enabled for individual VLANs.

> The DRC feature is based on the concept of an uplink group. An uplink group consists of all the ports that provide a path to the root bridge (the root port and any blocked ports). If the root port fails, the blocked port with next lowest cost from the uplink group is selected and immediately put in the forwarding state without going through the standard spanning tree listening and learning states.

> To accelerate convergence time once DRC has switched over to a new root port, STP-PV transmits dummy packets out the new root port, with the source MAC addresses taken from its forwarding table. The destination

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

**DRC and Link Up Events**

In the event of failure of the primary uplink, a replacement uplink is immediately selected from the uplink group and put into the forwarding state. If another port is enabled that, in accordance with STP rules, should become the primary uplink (root port), the switch delays migrating to the new port for twice the forwarding delay. The purpose of this delay is two-fold:

- Stability—If the primary uplink is flapping, reenabling the link immediately can introduce additional instability into the network.

- Reduced Traffic Loss—DRC moves a port into the forwarding state as soon as it is up, but the connected port obeys the usual STP rules; i.e. it goes through the listening and learning stages, which take 15 seconds each by default. Delaying the switchover allows the connected port to go to through the listening and learning states while the switch is still transmitting packets on the original uplink.

The optimal behavior is to keep the current uplink active and hold the new port in the blocked state for twice the forwarding delay.

https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

20.     In view of preceding paragraphs, each and every element of at least claim 1 of the '435 Patent is found in the Accused Products. And upon information and belief, each and every element of at least claim 1 of the '435 Patent is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through

Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

21.     Defendants continue to directly infringe at least one claim of the '435 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

22.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case.  Plaintiff dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case.  Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

23.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.  *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE,*

'435 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.dell.com/support/article/us/en/04/sln316270/dell-emc-powerswitch-n-series

- https://www.dell.com/support/article/en-us/how10525/how-to-manage-multiple-spanning-tree-mstp-using-command-line-on-dell-networking-powerconnect-campus-switches?lang=en

- https://cc.cnetcontent.com/inlinecontent/mediaserver/len/bf8/bd5/bf8bd5f94d05419098c68e753796699e/original.pdf

24.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '435 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '435 Patent. The Accused Products are especially made or adapted for infringing the '435 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '435 Patent.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## REQUEST FOR RELIEF

---

*LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '435 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '435 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '435 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '435 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020                    Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296

ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

# EXHIBIT C4

# UNITED STATES DISTRICT COURT
## Western District of Texas
## WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS LLC | § | |
| | § | |
| vs. | § | NO:  WA:20-CV-00476-ADA |
| | § | |
| DELL TECHNOLOGIES INC., DELL INC., | § | |
| EMC CORPORATION | | |

**ORDER GOVERNING PROCEEDINGS – PATENT CASE**

This Order shall govern proceedings in this case. The following deadlines are hereby set:

This case is SET for a telephonic Rule 16 Case Management Conference on Wednesday, October 21, 2020 at 1:30 p.m.  Participants shall dial into the following number 5 minutes before the scheduled time: **866.434.5269; access code 967-8090**. Lead counsel for each party, and all unrepresented parties, shall be present. Client representatives are welcome to attend, but such attendance is not required. In person attendance is permitted, but not required. Anyone planning to attend in person should so inform the Court by contacting chambers not later than two court days before the scheduled hearing so the Court can evaluate whether to hold the conference in the courtroom, or in chambers. The Court expects the parties to be prepared to discuss:

    a.  an overview of the claims and defenses, including any unique issues the parties believe should be addressed at this stage of the case;

    b.  issues involving the case schedule and potential amendments to the Court's default scheduling order, including the date for the *Markman* Hearing;

    c.  issues relating to claim construction, including whether a live tutorial would be of benefit to the Court;

    d.  issues relating to discovery, including potential amendments to the Court's default discovery limits or Protective Order; and,

    e.  any other issues the parties believe would lead to the just, speedy and inexpensive determination of this action.

2.    (Not later than 7 days before the CMC). Plaintiff shall serve preliminary infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claims(s) are found.  Plaintiff shall also identify the priority date (*i.c.*

the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit.

3.      (Not later than 3 business days before the CMC). Lead counsel for each party shall meet and confer (either in person or by telephone), to discuss whether they believe the Court's default Scheduling Order and default Discovery Limits are appropriate for this case, and any issues relating to the management of this case they intend to raise at the CMC.

4.      (Two weeks after the CMC). The Parties shall submit an agreed Scheduling Order. If the parties cannot agree, the parties shall submit a separate Joint Motion for entry of each Order briefly setting forth their respective positions on items where they cannot agree. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings.

5.      (Two weeks after the CMC). Deadline for Motions to Transfer. The Court also adopts the following page limits and briefing schedule for Motions to Transfer:

a. Opening – 15 pages

b. Response – 15 pages, due 14 days after the Opening brief

c. Reply – 5 pages, due 7 days after the Response brief

6.      (Seven weeks after the CMC). Defendant shall serve preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s), and (3) summary, annual sales information for the accused product(s) for the two years preceding the filing of the Complaint,[1] unless the parties agree to some other timeframe.

## DISCOVERY

Except with regard to venue, jurisdictional, and claim construction-related discovery, all other discovery is stayed until after the *Markman* hearing. Notwithstanding this general stay of discovery, the Court will permit limited discovery by agreement of the parties, or upon request, where exceptional circumstances warrant. For example, if discovery outside the United States is contemplated, the Court will be inclined to allow such discovery to commence before the *Markman* hearing.

---

[1] With regard to expired patents, the sales information shall be provided for the two years preceding expiration.

With respect to venue and jurisdictional discovery, the Court generally grants leave for the parties to conduct targeted discovery (including, but not limited to requests for production, interrogatories, and depositions) with regard to motions to transfer venue or motions to dismiss based on lack of jurisdiction. If the parties disagree as to what reasonable discovery limits are, the Court encourages the parties to contact the Court to request a telephonic discovery hearing.

Following the *Markman* hearing, the following discovery limits will apply to this case. The Court will consider reasonable requests to adjust these limits should circumstances warrant.

1. Interrogatories: 30 per side2

2. Requests for Admission: 45 per side

3. Requests for Production: 75 per side

4. Fact Depositions: 70 hours per side (for both party and non-party witnesses combined)

5. Expert Depositions: 7 hours per report3

**Electronically Stored Information**. As a preliminary matter, the Court will not require general search and production of email or other electronically stored information (ESI), absent a showing of good cause. If a party believes targeted email/ESI discovery is necessary, it shall propose a procedure identifying custodians and search terms it believes the opposing party should search. The opposing party can oppose, or propose an alternate plan. If the parties cannot agree, they shall contact chambers to schedule a call with the Court to discuss their respective positions.

## DISCOVERY DISPUTES

A party may not file a Motion to Compel discovery unless: (1) lead counsel have met and conferred in good faith to try to resolve the dispute, and (2) the party has contacted the Court's law clerk (with opposing counsel) to arrange a telephone conference with the Court to summarize the dispute and the parties respective positions. After hearing from the parties, the Court will determine if further briefing is required.

## PROTECTIVE ORDER

Pending entry of the final Protective Order, the Court issues the following interim Protective Order to govern the disclosure of confidential information in this matter:

> If any document or information produced in this matter is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some

---

[2] A "side" shall mean the plaintiff (or related plaintiffs suing together) on the one hand, and the defendant (or related defendants sued together) on the other hand. In the event that the Court consolidates related cases for pretrial purposes, with regard to calculating limits imposed by this Order, a "side" shall be interpreted as if the cases were proceeding individually. For example, in consolidated cases the plaintiff may serve up to 30 interrogatories on each defendant, and each defendant may serve up to 30 interrogatories on the plaintiff.

[3] For example, if a single technical expert submits reports on both infringement and invalidity, he or she may be deposed for up to 14 hours in total.

other confidential designation (such as "Confidential – Outside Attorneys Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).

If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this local rule shall keep it confidential and use it only for purposes of litigating the case.

## CLAIM CONSTRUCTION ISSUES

**Terms for Construction**. Based on the Court's experience, the Court believes that it should have presumed limits on the number of claim terms to be construed. The "presumed limit" is the maximum number of terms that the parties may request the Court to construe without further leave of Court. If the Court grants leave for the additional terms to be construed, depending on the complexity and number of terms, the Court may split the Markman hearing into two hearings.

The presumed limits based on the number of patents-in-suit are as follows:

### Limits for Number of Claim Terms to be Construed

| 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|
| 10 terms | 12 terms | 15 terms |

When the parties submit their joint claim construction statement, in addition to the term and the parties' proposed constructions, the parties should indicate which party or side proposed that term, or if that was a joint proposal.

**Claim Construction Briefing**. The Court will require simultaneous claim construction briefing with the following default page limits; however, where exceptional circumstances warrant, the Court will consider reasonable requests to adjust these limits. These page limits shall also apply collectively for consolidated cases; however, the Court will consider reasonable requests to adjust page limits in consolidated cases where circumstances warrant. In addition, the Court is very familiar with the law of claim construction and encourages the parties to forego lengthy recitations of the underlying legal authorities and instead focus on the substantive issues unique to each case.

Unless otherwise agreed by the parties, all simultaneous filings will take place at 5:00 p.m. CT.

**Page Limits for Markman Briefs**

| Brief | 1-2 Patents | 3-5 Patents | More than 5 Patents |
|---|---|---|---|
| Opening | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |
| Response | 20 pages | 30 pages | 30 pages, plus 5 additional pages for each patent over 5 up to a maximum of 45 pages |
| Reply | 10 pages | 15 pages | 15 pages, plus 2 additional pages for each patent over 5 up to a maximum of 21 pages |

**Conduct of the Markman Hearing**.

The Court generally sets aside one half day for the *Markman* hearing; however, the Court is open to reserving more or less time, depending on the complexity of the case and input from the parties. The Court requires submission of technology tutorials in advance of the *Markman* hearing when they may be of benefit. The parties may submit tutorials in electronic form not later than one week before the *Markman* hearing and the Court encourages the parties to aim for tutorials with voiceovers in the 15 minute range. If a party intends to present a live tutorial, the parties should contact the Court to set-up a Zoom or telephonic tutorial to occur at least a week before the *Markman* hearing. In general, tutorials should be: (1) directed to the underlying technology (rather than argument related to infringement or validity), and (2) limited to 15 minutes per side. For the Court's convenience, the tutorial may be recorded, but will not be part of the record. Parties may not rely on or cite to the tutorial in other aspects of the litigation.

The Court will consider the parties suggestions on the order of argument at the *Markman* hearing. However, if the parties do not suggest a different procedure, the Court will allow the Plaintiff to pick the first term and then alternate by term. As a general rule, if one side proposes "plain and ordinary meaning" as its construction or asserts that a term is indefinite, the other party shall go first.

## GENERAL ISSUES

1.    The Court does not have a limit on the number of motions for summary judgment (MSJs); however, absent leave of Court, the cumulative page limit for Opening Briefs for all MSJs is 40 pages per side.

2.      There may be instances where the submission of substantive briefs via audio file will be of help to the Court. If a party is contemplating submitting a brief via audio file it should contact the Court for guidance on whether it would be helpful to the Court. However, the Court has determined that audio recordings of *Markman* briefs are of limited value and those need not be submitted. The recordings shall be made in a neutral fashion, shall be verbatim transcriptions without additional colloquy (except that citations and legal authority sections need not be included), and each such file shall be served on opposing counsel. The Court does not have a preference for the manner of recording and has found automated software recordings, as well as attorney recordings, to be more than satisfactory. Audio files shall be submitted via USB drive, Box (not another cloud storage), or email to the law clerk (with a cc to opposing counsel) and should be submitted in mp3 format.

3.      The Court will entertain reasonable requests to streamline the case schedule and discoveryand encourages the parties to contact the Court's law clerk (with opposing counsel) toarrange a call with the Court when such interaction might help streamline the case.

4.      The Court is generally willing to extend the response to the Complaint up to 45 days ifagreed by the parties. However, longer extensions are disfavored and will require goodcause.

5.      For Markman briefs, summary judgment motions, and *Daubert* motions, each party shalldeliver to Chambers one (1) paper copy of its Opening, Response, and Reply Briefs, omittingattachments, no later than one week after the last-filed brief or at least a week before the hearing, whichever is earlier.

6.      Plaintiff must file a notice informing the Court when an IPR is filed, the expected time for an institution decision, and the expected time for a final written decision, within two weeks of the filing of the IPR.

7.      To the extent the parties need to email the Court, the parties should use the following emailaddress: TXWDml_LawClerks_JudgeAlbright@txwd.uscourts.gov.

ORDERED this 5th day of October, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

APPENDIX A – DEFAULT SCHEDULE

| Deadline | Item |
|---|---|
| 7 days before CMC | Plaintiff serves preliminary[4] infringement contentions in the form of a chart setting forth where in the accused product(s) each element of the asserted claim(s) are found. Plaintiff shall also identify the earliest priority date (*i.e.* the earliest date of invention) for each asserted claim and produce: (1) all documents evidencing conception and reduction to practice for each claimed invention, and (2) a copy of the file history for each patent in suit. |
| 2 weeks after CMC | Deadline for Motions to Transfer. |
| 7 weeks after CMC | Defendant serves preliminary invalidity contentions in the form of (1) a chart setting forth where in the prior art references each element of the asserted claim(s) are found, (2) an identification of any limitations the Defendant contends are indefinite or lack written description under section 112, and (3) an identification of any claims the Defendant contends are directed to ineligible subject matter under section 101. Defendant shall also produce (1) all prior art referenced in the invalidity contentions, (2) technical documents, including software where applicable, sufficient to show the operation of the accused product(s), and (3) summary, annual sales information for the accused product(s) for the two years preceding the filing of the Complaint, unless the parties agree to some other timeframe. |
| 9 weeks after CMC | Parties exchange claim terms for construction. |
| 11 weeks after CMC | Parties exchange proposed claim constructions. |
| 12 weeks after CMC | Parties disclose extrinsic evidence. The parties shall disclose any extrinsic evidence, including the identity of any expert witness they may rely upon with respect to claim construction or indefiniteness. With respect to any expert identified, the parties shall also provide a summary of the witness's expected testimony including the opinions to be expressed and a general description of the basis and reasons therefor. A |

---

[4] The parties may amend preliminary infringement contentions and preliminary invalidity contentions without leave of court so long as counsel certifies that it undertook reasonable efforts to prepare its preliminary contentions and the amendment is based on material identified after those preliminary contentions were served, and should do so seasonably upon identifying any such material. Any amendment to add patent claims requires leave of court so that the Court can address any scheduling issues.

OGP Version 3.0

| | failure to summarize the potential expert testimony in a good faith, informative fashion may result in the exclusion of the proffered testimony. With respect to items of extrinsic evidence, the parties shall identify each such item by production number or produce a copy of any such item if not previously produced. |
|---|---|
| 13 weeks after CMC | Deadline to meet and confer to narrow terms in dispute and exchange revised list of terms/constructions. |
| 14 weeks after CMC | Parties file Opening claim construction briefs, including any arguments that any claim terms are indefinite. |
| 17 weeks after CMC | Parties file Responsive claim construction briefs. |
| 19 weeks after CMC | Parties file Reply claim construction briefs. |
| 20 weeks after CMC | Parties submit Joint Claim Construction Statement. In addition to filing, the parties shall jointly submit, via USB drive, Box (not another cloud storage),[5] or email to the law clerk, pdf versions of all as-filed briefing and exhibits. Each party shall deliver to Chambers paper copies of its Opening, Response , and Reply *Markman* Briefs, omitting attachments. Absent agreement of the parties, the Plaintiff shall be responsible for the timely submission of this and other Joint filings. |
| 23 weeks after CMC (but at least 1 week before Markman hearing) | Parties submit optional technical tutorials. The parties shall also jointly submit, via USB drive, Box (not another cloud storage), or email to the law clerk, pdf versions of all as-filed briefing and exhibits. |
| 24 weeks after CMC (or as soon as practicable) | Markman Hearing at [9:00 a.m. or 1:00 p.m.] |
| 1 business day after Markman hearing | Fact Discovery opens; deadline to serve Initial Disclosures per Rule 26(a). |
| 6 weeks after Markman hearing | Deadline to add parties. |
| 8 weeks after Markman hearing | Deadline to serve Final Infringement and Invalidity Contentions. After this date, leave of Court is required for any amendment to Infringement or Invalidity contentions. This deadline does not relieve the Parties of their obligation to |

[5] To the extent a party wishes to use cloud storage, the parties should contact the law clerk to request a Box link so that the party can directly upload the file to the Court's Box account.

OGP Version 3.0

| | |
|---|---|
| | seasonably amend if new information is identified after initial contentions. |
| 12 weeks after Markman hearing | Deadline to amend pleadings. A motion is not required unless the amendment adds patents or patent claims. |
| 26 weeks after Markman | Deadline for the first of two meet and confers to discuss significantly narrowing the number of claims asserted and prior art references at issue. Unless the parties agree to the narrowing, they are ordered to contact the Court's Law Clerk to arrange a teleconference with the Court to resolve the disputed issues. |
| 30 weeks after Markman hearing | Close of Fact Discovery. |
| 31 weeks after Markman hearing | Opening Expert Reports. |
| 35 weeks after Markman hearing | Rebuttal Expert Reports. |
| 38 weeks after Markman hearing | Close of Expert Discovery. |
| 39 weeks after Markman hearing | Deadline for the second of two meet and confer to discuss narrowing the number of claims asserted and prior art references at issue to triable limits. To the extent it helps the parties determine these limits, the parties are encouraged to contact the Court's Law Clerk for an estimate of the amount of trial time anticipated per side. The parties shall file a Joint Report within 5 business days regarding the results of the meet and confer. |
| 40 weeks after Markman hearing | Dispositive motion deadline and *Daubert* motion deadline. |
| 42 weeks after Markman hearing | Serve Pretrial Disclosures (jury instructions, exhibits lists, witness lists, discovery and deposition designations). |
| 44 weeks after Markman hearing | Serve objections to pretrial disclosures/rebuttal disclosures. |
| 45 weeks after Markman hearing | Serve objections to rebuttal disclosures and **File** Motions *in limine.* |

OGP Version 3.0

| 46 weeks after Markman hearing | File Joint Pretrial Order and Pretrial Submissions (jury instructions, exhibits lists, witness lists, discovery and deposition designations); file oppositions to motions *in limine* |
|---|---|
| 47 weeks after Markman hearing | File Notice of Request for Daily Transcript or Real Time Reporting. If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Kristie Davis at kmdaviscsr@yahoo.com<br><br>Deadline to meet and confer regarding remaining objections and disputes on motions *in limine*. |
| 3 business days before Final Pretrial Conference. | File joint notice identifying remaining objections to pretrial disclosures and disputes on motions *in limine*. |
| 49 weeks after Markman hearing (or as soon as practicable) | Final Pretrial Conference. The Court expects to set this date at the conclusion of the *Markman* Hearing. |
| 52 weeks after Markman hearing (or as soon as practicable)[6] | Jury Selection/Trial. The Court expects to set these dates at the conclusion of the *Markman* Hearing. |

[6] If the actual trial date materially differs from the Court's default schedule, the Court will consider reasonable amendments to the case schedule post-*Markman* that are consistent with the Court's default deadlines in light of the actual trial date.

OGP Version 3.0